# United States Court of Appeals
## For the First Circuit

---

No. 02-1236

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM SEDOMA, SR.,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Robert L. Sheketoff for appellant.
Emily R. Schulman, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

---

June 12, 2003

---

**LIPEZ**, <u>Circuit Judge</u>.  This case requires us to apply the grouping principles set forth in § 3D1.2 of the Sentencing Guidelines to the defendant William Sedoma, Sr.'s convictions for conspiracy to possess with intent to distribute marijuana, conspiracy to defraud the State of Rhode Island, its taxpayers, and the Tiverton Police Department of their intangible right to the defendant's honest services, ten counts of mail fraud, and one count of wire fraud.

## I.

From January 1996 through March 1998, a marijuana and cocaine trafficking organization operated in and around Tiverton, Rhode Island and Fall River, Massachusetts.  Sedoma, a Detective Sergeant with the Tiverton Police Department, was a member of this organization, acting as "lookout" and "protector" for the organization and its members by providing confidential police information and other specialized assistance.  This assistance included checking vehicle registrations and telephone subscriber records, disclosing the identities of undercover police operatives and cooperating individuals, and warning the organization of police enforcement actions such as controlled deliveries of drug packages intercepted by law enforcement agencies.  In return for his protection and assistance, Sedoma received cash payments and other benefits from the organization--specifically, he was paid $25 per pound of marijuana that the organization shipped into Tiverton.

Arrested, indicted, and tried for this criminal activity, Sedoma was convicted on February 23, 2001, of conspiracy to possess with intent to distribute marijuana, see 21 U.S.C. § 846, conspiracy to defraud the United States by devising and executing a scheme to defraud the State of Rhode Island, its taxpayers, and the Tiverton Police Department of their intangible right to the defendant's fair and honest services, see 18 U.S.C. §§ 371, 1346, ten counts of mail fraud, see 18 U.S.C. § 1341, and one count of wire fraud, see 18 U.S.C. § 1343. On February 8, 2002, the district court sentenced Sedoma to a term of 293 months of imprisonment on the drug conspiracy count and 60-month terms on the conspiracy to defraud count, the ten mail fraud counts and the wire fraud count, all of the terms to be served concurrently, followed by four years of supervised release. Sedoma appeals his sentence on the theory that the district court erred by failing to group for sentencing purposes under U.S.S.G. § 3D1.2 the drug conspiracy and the conspiracy to defraud. We agree. Therefore, we vacate Sedoma's sentence and remand to the district court for resentencing.

**II.**

In determining Sedoma's sentence, the district court relied almost entirely on the Presentence Report (PSR) prepared by the Probation Office. Accordingly, we address our analysis directly to the PSR. The PSR divided Sedoma's offenses into two

groups. Group 1 consisted of the drug conspiracy. Group 2 consisted of the conspiracy to defraud and the mail and wire fraud counts.

Pursuant to the drug quantity tables set forth in U.S.S.G. § 2D1.1(c)(4), and based on his participation in a conspiracy to distribute between 1,000 and 3,000 kilograms of marijuana, Sedoma's base offense level for Group 1 was 32. The PSR recommended, and the district court assigned, a two-level upward adjustment for abuse of a position of trust under U.S.S.G. § 3B1.3, and another 2-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1, bringing his adjusted offense level to 36.

For the Group 2 convictions, the PSR refers to U.S.S.G. § 2X1.1, which addresses assignment of an offense level for attempt, conspiracy and solicitation. Section 2X1.1(c) provides that, when a conspiracy is expressly covered by another offense guideline section, that cross-referenced guideline should be applied. In this case, both 18 U.S.C. § 371, conspiracy to defraud the United States, and the specific mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, are explicitly covered by U.S.S.G. § 2C1.7--fraud involving deprivation of the intangible right to the honest services of public officials. Section 2C1.7(c)(1) directs that "[i]f the offense was committed for the purpose of facilitating the commission of another criminal offense, apply the offense guideline applicable to a conspiracy to commit

that other offense if the resulting offense level is greater than that determined [by applying § 2C1.7(a) and (b)]." The application of § 2C1.7(a) and (b) would result in an offense level of 10. The PSR determined that Sedoma did indeed commit the conspiracy to defraud for the purpose of facilitating the commission of the drug conspiracy. Thus, the guidelines point us again to § 2D1.1(c)(4) and result in an offense level (adjusted for abuse of position of trust and obstruction of justice) of 36. Since this is greater than the offense level that would result from the application of § 2C1.7(a) and (b), § 2C1.7(c) applies, resulting in a final offense level for Group 2 of 36.

The PSR then turned to § 3D1.4 which determines the combined offense level for multiple groups. In determining the combined offense level, § 3D1.4(a) instructs the sentencing judge to assign one unit for the group with the highest offense level and then assign one additional unit for each group that is equally serious or from 1 to 4 offense levels less serious.[1] Section 3D1.4 also contains a chart which relates an increase in offense level to the total number of units.[2] This increase is to be added to the

---

[1] Sections 3D1.4(b) and (c) count as one-half unit any Group 5 to 8 levels less serious than the Group with the highest offense level and disregards any Group that is 9 or more levels less serious, although such Groups may provide reason for sentencing at the higher end of the applicable sentencing range.

[2] Section 3D1.4 provides as follows:

The combined offense level is determined by taking the

count with the highest offense level to determine the combined offense level. In this case, the adjusted offense level of 36 for Group 1 is the highest offense level, and the PSR assigns it one unit. Another unit is assigned for Group 2 which, with an offense level of 36, is equally serious. According to the chart, two units requires a 2-level increase, resulting in a total combined offense level of 38.

The PSR determined that Sedoma had a criminal history category of I. With a criminal history category of I, an offense level of 38 results in a sentence range of 235 to 293 months. The district court sentenced Sedoma to 293 months of imprisonment, the maximum sentence within this range.

**III.**

During sentencing, Sedoma did not object to the court's grouping of his counts of conviction. Therefore, we review for plain error Sedoma's argument that, pursuant to U.S.S.G. § 3D1.2, the district court should have grouped together the drug conspiracy with the conspiracy to defraud, and mail and wire fraud counts.

---

offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1 ½ | add 1 level |
| 2 | add 2 levels |
| 2 ½ - 3 | add 3 levels |
| 3 ½ - 5 | add 4 levels |
| More than 5 | add 5 levels. |

United States v. Albanese, 287 F.3d 226, 228 (1st Cir. 2002) (citing United States v. Olano, 507 U.S. 725, 731-32 (1993)). Under plain error review, the appellant must show (1) the occurrence of an error; (2) that the error is obvious or clear under current law; and (3) that the error substantially and adversely affects the rights of the appellant. Olano, 507 U.S. at 732-34. Remedial discretion in the face of plain error should be exercised "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted).

Relying on § 3D1.2, Sedoma's challenge to his sentence is three-pronged. Section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." The provision then goes on to explain the meaning of "substantially the same harm" by listing four subsections defining the circumstances under which counts involve substantially the same harm for the purposes of the rule. Sedoma argues that three of these subsections--§ 3D1.2(b), (c), (d)--mandate grouping of his counts of conviction.

**A.  Section 3D1.2(b)**

Under § 3D1.2(b), counts are to be grouped together "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or

constituting part of a common scheme or plan." Application note 2 explains that

> [f]or offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsection[] . . . (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related.

Sedoma argues that, although legally distinct, the drug conspiracy and the conspiracy to defraud are so completely intertwined factually as to be virtually indistinguishable. For Sedoma and the drug trafficking organization, there was a single course of conduct designed to produce one harm: the continued sale of a controlled substance. Thus, Sedoma argues that the counts are connected by a common criminal objective involving a single societal harm and should be grouped pursuant to § 3D1.2(b).

The government counters that § 3D1.2(b) does not apply because the marijuana trafficking conspiracy harmed society's interest in drug prevention, whereas the conspiracy to defraud harmed the integrity of Rhode Island's law enforcement agencies. Because Sedoma's two conspiracy convictions harmed distinct social interests, the government maintains that they did not involve the same victim within the meaning of § 3D1.2(b), and therefore were properly counted as two groups.

**B.  Section 3D1.2(c)**

Section 3D1.2(c) provides that counts are to be grouped "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  Sedoma argues that the conduct embodied in the conspiracy to defraud count--defrauding the public of its intangible right to the defendant's honest services--formed the basis of the upward adjustment to the drug conspiracy count for abuse of a position of public trust under § 3B1.3.

The government argues that Sedoma's conspiracy to defraud embodies conduct that is distinct from that upon which his conviction for conspiring to possess with intent to distribute marijuana was based.  Therefore, the adjustment to Sedoma's Group 1 offense level for abusing his position of trust to facilitate the marijuana trafficking conspiracy does not "fully account" for the conduct embodied in the conspiracy to defraud and does not meet the requirements of § 3D1.2(c).

**C.  Section 3D1.2(d)**

Finally, Section 3D1.2(d) instructs courts to group offenses for which "the offense level is determined largely on the basis of the total amount of harm or loss, or the quantity of a substance involved, or some other measure of aggregate harm," and states that "offenses covered by the following guidelines are to be

grouped under this subsection."  The list includes § 2D1.1 (under which Sedoma's drug offense falls) and § 2C1.7 (the guideline for the substantive offense underlying the conspiracy to defraud). Because sections 2D1.1 and 2C1.7 both calculate the base offense level by reference to the quantity of drugs attributable to the conspiracy, Sedoma argues that the counts should be grouped under § 3D1.2(d).

The government counters that while the quantity of drugs reasonably foreseeable to Sedoma as a result of his participation in the conspiracy is a straightforward measure of the societal harm flowing from that violation, the use of the drug quantity to determine the offense level attributable to the conspiracy to defraud does not directly measure the harm resulting from that offense.  As the statutory language acknowledges, the right of the State of Rhode Island, its taxpayers, and the Tiverton Police Department to Sedoma's honest services is "intangible."  18 U.S.C. § 1346.  Because there is no direct, incremental measure of the harm caused by conspiring to defraud others of their intangible right to honest services, the government concludes that the harms stemming from Sedoma's two conspiracy convictions are incomparable and therefore cannot be aggregated effectively for the purpose of § 3D1.2(b).

Having considered the respective arguments of the parties, we conclude that the district court committed plain error

in failing to group the drug conspiracy and § 371 conspiracy to defraud the United States under § 3D1.2(c). Since that error alone requires us to vacate the sentence imposed, we need not decide the merits of Sedoma's claims based on subsections (b) and (d).

**IV.**

### A.  The Error

According to § 3D1.2(c), "[w]hen one of the counts embodies conduct that is treated as . . . [an] adjustment to [] the guideline applicable to another of the counts," the counts "shall be grouped together into a single Group." Application note 5 to § 3D1.2 explains that the purpose of subsection (c) is to "prevent[] 'double counting' of offense behavior" as long as the offenses are "closely related." Thus, in our analysis of § 3D1.2(c), we must determine whether the conduct embodied in the conspiracy to defraud is treated as an adjustment to the guideline applicable to the drug conspiracy. If it is, the court's imposition of the two-level upward adjustment for abuse of a position of trust under § 3B1.3 to the base offense level of the drug conspiracy count, followed by another two-level increase for the separate count of conspiracy to defraud the public of honest services pursuant to the § 3D1.4 combined offense level determination, results in double counting and triggers the applicability of § 3D1.2(c).

The Probation Office determined that Sedoma committed the conspiracy to defraud "for the purpose of facilitating the commission of another criminal offense"--the conspiracy to possess with intent to distribute marijuana.[3]  Thus, the conduct depriving the public of Sedoma's honest services is intricately related to the drug conspiracy, and, as such, is addressed by the PSR in its upward adjustment to Sedoma's drug conspiracy sentence for abuse of a position of trust.  In its support for the upward adjustment, the PSR stated that Sedoma facilitated the commission of the drug conspiracy

> by disclosing confidential law enforcement information to [the drug organization] which included information regarding:  ongoing criminal investigations, controlled drug deliveries, and the identity of undercover officers/cooperating witnesses.  Sedoma also conducted license plate checks, criminal record inquiries, and telephone subscriber checks in his capacity as a police officer and provided information which he obtained from these inquires to [the drug organization].

Given this analysis, the PSR unmistakably used conduct embodied in the conspiracy to defraud count as the basis for a two-point abuse of position of trust adjustment to the base offense level of the drug conspiracy count.  Yet conduct embodied in the conspiracy to defraud count also resulted in an additional two-level increase to Sedoma's offense level for the drug conspiracy under the § 3D1.4

---

[3]  Although not made explicit during sentencing, the district court accepted this finding in its adoption of the PSR.

combined offense level analysis. Grouping all of the counts into one group would avoid this second two-level addition. As noted, such avoidance of double-counting is the express purpose of § 3D1.2(c).

The government argues that the district court, in adopting the PSR, correctly avoided grouping the drug conspiracy and the conspiracy to defraud pursuant to § 3D1.2(c) "because the adjustment to Defendant's Group 1 offense level for abusing his position of public trust to facilitate the charged marijuana trafficking conspiracy did not fully account for the conduct embodied in Defendant's conspiracy to defraud." Asserting that "the conspiracy to defraud encompassed conduct that was distinct from that upon which the conviction for conspiring to possess with intent to distribute marijuana was based," the government argues that imposition of the two-level abuse of a position of trust adjustment to the drug conspiracy charge does not encompass all of the conduct constituting the conspiracy to defraud. Therefore, according to the government, grouping of the two offenses would result in some of the conduct constituting the conspiracy to defraud going unpunished.

The government's grouping argument is a bit opaque. If the government means that the conspiracy to defraud involved overt acts distinct from overt acts that furthered the marijuana distribution conspiracy, that is self-evidently true and beside the

-13-

point.  The crucial question is whether conduct embodied in the conspiracy to defraud is accounted for by the "abuse of position of trust" adjustment (§ 3B1.3) which, by its terms, applies if "the defendant abused  a position of public . . . trust . . . in a manner that significantly facilitated the commission or concealment of the offense. . ."  U.S.S.G. § 3B1.3 (emphasis added).  If some of the overt acts embodied in the conspiracy to defraud involved an abuse of a position of public trust and significantly facilitated the commission of the drug conspiracy, the adjustment applies.  The PSR makes clear that there was such facilitation here.  Thus, by the terms of the applicable grouping provision of the Guidelines (§ 3D1.2(c)), the conspiracy to defraud count "embodie[d] conduct that is treated as . . . [an] adjustment to [] the guideline applicable to [the drug conspiracy]."

The plain language of § 3D1.2(c) does not require that the adjustment to the drug conspiracy offense level "fully account for" the conduct covered by the conspiracy to defraud.  Instead, it merely requires that conduct "embodie[d]" by the second offense be "treated as an adjustment."  The meaning of "embody" is "to collect into or include in a body; organize; incorporate."  Random House Webster's Unabridged Dictionary 635 (2d ed. 1997).  The conspiracy to defraud included conduct that was treated as an adjustment to the drug conspiracy offense level.  Moreover, the government's argument that grouping all the counts would impermissibly result in

-14-

some of the conduct constituting the conspiracy to defraud going unpunished is directly refuted by application note 4 to § 3D1.3-- the Guidelines section that would apply to determine the applicable offense level if all the counts were grouped. Application note 4 to § 3D1.3 acknowledges that "[s]ometimes the rule specified in this section may not result in incremental punishment for additional criminal acts because of the grouping rules." It is well established that "courts should strive to apply the guidelines as written, giving full force and effect to the Sentencing Commission's interpretive commentary and application notes." United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993). Thus, although the government may have a policy argument that the counts should not be grouped into a single group because some of the conduct involved in the conspiracy to defraud may go unpunished, the Guidelines, as written, do not require that all of the conduct be "fully account[ed] for." By the plain language of § 3D1.2(c), it is enough that conduct "embodied" in the second offense is "treated as an adjustment" to the other offense.

Moreover, the factual premise of the government's counter argument to grouping under § 3D1.2(c) is dubious. As noted, the government's articulation of this argument--that "the conspiracy to defraud encompassed conduct that was distinct from that upon which the [drug conspiracy] was based"--makes little sense. Putting a more sensible spin on the argument, the government may be saying

that some of the conduct embodied in the conspiracy to defraud was not embodied in the adjustment for an abuse of a position of trust because (a) the conduct was not an abuse of Sedoma's position as a police officer, and/or (b) it did not significantly facilitate the drug conspiracy. Even with that understanding, the argument is still unpersuasive.

The government asserts that because Sedoma was paid for disclosing to the drug organization the identity of a cooperating witness separately from and in addition to the payments he received on a per-pound basis for every shipment of marijuana the organization received, this aspect of Sedoma's theft of honest services was outside the scope of the conviction for conspiring to possess with intent to distribute marijuana. Again, the basis for calculating the payment to Sedoma seems beside the point when the payment was for conduct that abused his position of trust and facilitated the drug conspiracy. Similarly, Sedoma conducted license plate queries and criminal record checks at the request of the drug organization when the head of the organization suspected undercover police activity. The government argues that, because the queries were conducted "on a variety of individuals, many of whom had no known connection to [the] drug organization, [they] were not accounted for in the abuse of a position of trust adjustment to this Group 1 offense level." However, these very examples were listed in the PSR adopted by the court as conduct

supporting the adjustment for abuse of his position of trust, and rightly so. These actions reinforced Sedoma's position in the organization as protector and facilitator.

Additionally, the government lists (a) selling a firearm to a member of the drug organization, (b) falsely notarizing the liquor license application of the nightclub (owned by the head of the drug organization) which, by the government's admission, "was one of the primary sites at which [the drug organization] stored, processed and packaged marijuana," and (c) attending parties hosted by members of the drug organization at which drugs were consumed, as examples of conduct not facilitated by Sedoma's position as a police officer and, therefore, not accounted for by the adjustment for abuse of a position of trust. While these acts are closely related to the drug conspiracy and reinforce Sedoma's position in the organization as protector and facilitator, the government may be correct that they were not facilitated by his position as a police officer. Even if this were so, it would not affect our conclusion that § 3D1.2(c) requires the grouping of all Sedoma's convictions. The adjustment for Sedoma's abuse of his position of trust does not have to "fully account" for, or incrementally punish, every act that furthered the conspiracy to defraud. Indisputably, Sedoma's participation in the conspiracy to defraud the public of his honest services as a Tiverton police officer primarily involved his disclosure of law enforcement information to

the drug organization. Indeed, the indictment for the conspiracy to defraud focused on this disclosure conduct. This count of the indictment "embodie[d] conduct that [was] treated as . . . [an] adjustment to" the offense level of the drug conspiracy for abuse of a position of trust. U.S.S.G. § 3D1.2(c). Thus, because the plain language of § 3D1.2 requires that the counts "shall be grouped," the failure to group the counts constitutes an error that is clear under current law. U.S. v. Seesing, 234 F.3d 456, 460 (9th Cir. 2000) (holding that upward adjustment for use of a homemade silencer without a serial number is clear error when the plain language of the guideline refers to a firearm with an "altered or obliterated serial number."); see also U.S. v. Munoz, 83 F.3d 7, 9 (1st Cir. 1996).

## B. Plain Error

Plain error review requires that the clear error substantially and adversely affect the rights of the appellant. Having determined that the drug conspiracy and the § 371 conspiracy should have been grouped according to the plain language of § 3D1.2(c), we note that § 3D1.3(a) directs the district court in the determination of the offense level applicable to the Group. Section 3D1.3(a) provides that "in the case of counts grouped together pursuant to § 3D1.2(a) - (c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most

-18-

serious of the counts comprising the Group, i.e. the highest offense level of the counts in the Group." Here, because the offense level for the conspiracy to defraud is determined by cross-reference to the underlying offense (in this case, the drug conspiracy) pursuant to § 2C1.7(c), both counts carry the same base offense level as determined by § 2D1.1(c), i.e., 32. Thus, the highest offense level of the counts in the Group is 32. When the upward adjustments for abuse of position of trust and obstruction of justice are made, the total offense level is 36--two offense levels lower than the offense level of 38 determined without grouping.

For a defendant with a criminal history category of I, an offense level of 36 carries a sentence range of 188 to 235 months, whereas an offense level of 38 carries a sentence range of 235 to 293 months. Sedoma was sentenced to the high end of the range applicable to an offense level of 38. Thus, the district court's failure to group the counts pursuant to § 3D1.2(c) permitted the court to increase the available sentence by 58 months. That increase in the sentence substantially and adversely affected Sedoma's rights.

We may exercise our discretion to correct plain error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732. When a defendant's sentence is increased by almost five years as a

result of a plain error in applying the Sentencing Guidelines, it would adversely affect the fairness, integrity and public reputation of judicial proceedings to ignore that error. <u>See</u> <u>United States</u> v. <u>Zillgitt</u>, 286 F.3d 128, 141 (2d Cir. 2002) ("[T]he fairness of the judicial proceedings was 'seriously affected' in this case by the magnitude of the increase that resulted from the sentencing error."). Hence, we conclude that Sedoma's sentence constitutes plain error that must be redressed.

## V.

For the reasons stated above, the sentence imposed by the district court is **vacated** and this case is **remanded** to the district court for resentencing consistent with this opinion.

So ordered.