F I L E D
United States Court of Appeals
Tenth Circuit

DEC 2 2003

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JOHN F. ROBERTSON,

Defendant-Appellee.

No. 02-1388

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 02-CR-2-N)

James C. Murphy, Assistant United States Attorney (John W. Suthers, United States Attorney, Linda A. McMahan and Jennifer Mardosz, Assistant United States Attorneys, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Raymond P. Moore, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, and John T. Carlson with him on the brief), Denver, Colorado, for Defendant-Appellee.

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

**McCONNELL**, Circuit Judge.

Some of the great virtues of the internet – its flexibility, universal accessibility, and privacy – also make it an especially potent venue for sexual predators to communicate with minors regarding illicit sexual encounters. The anonymity of these communications, in particular, serves both to ensnare the child and to thwart the protective efforts of law enforcement. Accordingly, at the instruction of Congress, the Sentencing Commission has imposed a two-point enhancement when the internet is used either to induce a minor to engage in prohibited sexual conduct or to facilitate travel for that purpose. To counteract the enforcement difficulties, child protective agencies turn the feature of anonymity against the would-be predators by setting up sting operations designed both to apprehend violators and to create a credible deterrent to predatory use of the internet.

This case involves interpretation of one of the guidelines that enhance sentences for child sexual abuse offenses involving use of a computer. The guideline, by its terms, reaches broadly to cover any instance in which a "computer or an Internet-access device" is used to "facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G § 2A3.2(b)(3) (the "Guideline"). Although the Guideline unquestionably applies to direct communications with minors under the age of 16, with adults with supervisory control over the minors, and with undercover agents posing as

minors as part of a sting operation, the district court held that it does not apply to communications with undercover agents posing as adults with supervisory control over fictitious minor victims. Because we find this interpretation inconsistent with the language and purpose of the Guideline, we reverse.

## FACTS

The facts in this case are undisputed. The following is a summary of the stipulation of facts from the plea agreement.

In early summer, 2001, Defendant John F. Robertson contacted an internet site advertising "fantasy tours," which is apparently a euphemism for trips involving paid sexual encounters. Unbeknownst to Mr. Robertson, this was a sting operation. He contacted the site by e-mail and requested further information. An undercover officer from the Sheriff's Department of Pueblo County, Colorado, sent Mr. Robertson a questionnaire to determine his preferences. Mr. Robertson completed the questionnaire that day, indicating his interest in "hot teen boys" and stating his age preference as "[t]he younger the better – late teens is preferable." Later, he narrowed his request to white boys between the ages of thirteen and fifteen, preferably with long hair. In graphic language not necessary to quote here, Mr. Robertson stated his desire to engage in anal and oral sex with the boys; he also proposed the use of illegal drugs "to help get the party started." Plea Agreement & Statement of Facts Relevant to

Sentencing ("Plea Agreement") at 4, App. 13.

During the course of communications between Mr. Robertson and the undercover officer, the undercover officer accidentally sent a message from his e-mail account at the Colorado Crimes Against Children Task Force. Mr. Robertson, a former intelligence analyst for the Federal Bureau of Investigation, e-mailed in reply: "Why did I get a response from the Colorado Crimes Against Children Task Force detailing available tours? This sounds like some kind of sting operation. I await your reply – JR." Plea Agreement at 3, App. 12. The undercover officer replied that he used the Colorado Crimes Against Children address as part of his cover. He explained that it was his practice to "sit on several high level committees in regards to child welfare so [he] can keep [his] finger on the pulse of what the do-gooders are doing and in what direction they are moving." *Id.* Mr. Robertson answered: "Thanks for clearing everything up. . . . [B]ear with me. I don't want to spend several years living in 'public housing' if you get my drift." *Id.* He then proceeded to discuss the details of his upcoming "fantasy tour."

Over the course of many months, Mr. Robertson and the undercover officer used e-mail and the internet to coordinate the details of Mr. Robertson's fantasy tour, including date, itinerary, price, and mode of payment, as well as the identification of two fictitious boys, "Michael" and "Andrew," supposedly aged

-4-

thirteen and fourteen, who met Mr. Robertson's specifications. Mr. Robertson paid a down payment in advance of the trip.

On December 27, 2001, Mr. Robertson flew from his home in Pennsylvania to Colorado Springs, Colorado, where he met the undercover officer, confirmed his identity, and tendered the balance of the price for the "tour." He brought two Sony Walkman portable CD players as Christmas gifts for "Michael" and "Andrew." He was arrested on the spot.

In federal district court, Mr. Robertson was charged with knowingly traveling in interstate commerce for the purpose of engaging in a sexual act with a person under eighteen years of age, in violation of 18 U.S.C. § 2423(b). He pled guilty. In the plea agreement, Mr. Robertson and the government agreed the United States Sentencing Guidelines established a base level of twenty-one for Mr. Robertson's offense. *See* U.S.S.G. § 2A3.2(a)(2). The government, however, contended that Mr. Robertson's use of a computer should increase his offense level by two under § 2A3.2(b)(3) of the Guidelines. Mr. Robertson disputed this adjustment.

The district court rejected the government's argument and ruled that the two-point enhancement was not applicable:

> I've also refused to place any upward adjustment for use
> of a computer, even though it is plain to me that the
> defendant did use a computer and that he did use the
> computer to persuade, induce, entice or coerce this

fictitious victim into engaging in this prohibited sexual conduct.

Tr. 31, App. 95. In a written Memorandum of Sentencing Hearing and Report of Statement of Reasons, at 2, App. 101, the district court explained: "This case appears to be one which falls outside the guideline's plain language defining who is a 'victim,' because, simply stated, the undercover officer did not represent to defendant that he (the officer) had not attained the age of sixteen years."

After making certain adjustments, described below, the district court sentenced Mr. Robertson to two years in prison, with three years of supervised release, which is the top of the applicable guideline range. The court explained:

> I think his crime is a serious crime. He came here intending to victimize two young boys. They were fictitious, but they weren't known by him to be fictitious. The language in his e-mails concerning those young boys is nothing short of brutal, so he deserves a sentence at the top of this guideline range.

Tr. 31, App. 95.

The district court granted two downward adjustments. One of those – a three-point adjustment for acceptance of responsibility, is not disputed. A second three-point downward departure was made in response to what the district court called an "apparent drafting lacuna in the guidelines," which would have the effect of sentencing defendants who have no sexual contact with a child more severely than those who do. Sentencing Mem. at 3, App. 102. The district court

departed downward "to a level at which defendant would have been sentenced if he had made sexual contact with his fictitious victims." *Id.* The government and Mr. Robertson agree that this downward departure required as a condition precedent the conclusion that the computer-use enhancement did not apply. The effect of reversing the district court with regard to the application of the computer-use enhancement, therefore, would be to increase Mr. Robertson's total offense level by five points, nearly doubling his prison sentence.

The government appeals the district court's ruling that the enhancement for use of a computer in committing the crime was not applicable. Exercising jurisdiction under 18 U.S.C. § 3742(b)(2), we reverse.

## DISCUSSION

The district court's interpretation of a sentencing guideline is a question of law that we review de novo. *See United States v. Smith*, 133 F.3d 737, 744 (10th Cir. 1997); *United States v. Farnsworth*, 92 F.3d 1001, 1007 (10th Cir. 1996). "We interpret the Sentencing Guidelines according to accepted rules of statutory construction." *United States v. Reaves*, 253 F.3d 1201, 1203 (10th Cir. 2001). In interpreting a guideline, we look at the language in the guideline itself, as well as at the "interpretative and explanatory commentary to the guideline" provided by the Sentencing Commission. *United States v. Frazier*, 53 F.3d 1105, 1112 (10th Cir. 1995); *see also* 18 U.S.C. § 3553(a)(5). "[C]ommentary in the Guidelines

Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

The guideline at issue in this case mandates a two-level enhancement "[i]f a computer or an Internet-access device was used to (A) persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct; or (B) facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G § 2A3.2(b)(3). Mr. Robertson argues that the application notes accompanying the Guideline preclude its application to cases in which there was neither an actual minor victim nor an undercover officer posing as one. The government argues that both subsection (A) and subsection (B) apply in this case. Because we conclude that subsection (B) applies, we will not consider applicability of subsection (A).

## I.       The Rationale for Enhanced Sentencing in Cases Involving Computers

The enhancement at issue here was added in response to the Child Protection and Sexual Predator Punishment Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974, which addressed the problem that cyberspace provides an increasingly common and effective medium by which would-be sexual predators can contact minors, or persons in control of minors, to arrange for sexual

encounters. *See generally United States v. Reaves*, 253 F.3d 1201, 1203-05 (10th Cir. 2001) (discussing the dangers of the internet in the context of another computer-based enhancement). Children commonly make wide use of the internet, often with little parental supervision, and sometimes with a dangerous degree of naivete. Behind the anonymous veil of the internet, predators can locate young people in teen chat rooms or other child-friendly sites, assume false identities, establish relationships, deploy pornographic images and other sexual enticements, and arrange for meetings – all shielded from the eyes of parents, police, or other protectors. As Representative Hutchinson explained shortly before the passage of the 1998 act:

> [B]y the year 2002, 45 million children will use the Internet to talk with friends, do homework assignments and explore the vast world around them. Computer technologies and Internet innovations have unveiled a world of information that is literally just a mouse click away.
>
> Unfortunately, individuals who seek children to sexually exploit and victimize them are also a mouse click away. Sex offenders who prey on children no longer need to hang out in parks or malls or school yards. Instead, they can roam from web site to chat room seeking victims with little risk of detection.
>
> The anonymous nature of the online relationship allows users to misrepresent their age, gender or interests. Children are rarely supervised while they are on the Internet. Unfortunately, this is exactly what cyber-predators look for.

144 Cong. Rec. H10,571 (daily ed. Oct. 12, 1998). *See also* 144 Cong. Rec.

S10,522 (daily ed. Sept. 17, 1998) (statement of Senator Hatch) ("[W]e must also be vigilant in seeking to ensure that the Internet is not perverted into a hunting ground for pedophiles and other sexual predators, and a drive-through library and post office for purveyors of child pornography. . . . One step that we can take is to ensure strong penalties for those who use the Internet for these horrible purposes.").

Besides facilitating direct seduction of children, the internet also allows panderers to advertise their wares anonymously in a national or even international market, making it much easier for them to find willing customers. Moreover, because these customers may come from afar and visit only briefly, it is more difficult for law enforcement to track them down than it is to track down those attracted by more traditional come-ons. *Cf.* H.R. Rep. No. 104-90, at 3-4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 759, 760-61, *quoted in Reaves*, 253 F.3d at 1205 ("Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute.")

To counter these evils, the 1998 act (among other things) directed the Sentencing Commission to impose harsher penalties on sexual criminals who used computers. Pub. L. No. 105-314, § 503, 112 Stat. at 2980-81. That directive

ultimately resulted in the addition of several similar enhancements, including the one at issue here. *See* U.S.S.G. app. C, amend. 592, at 31-48 (Supp. 2002). In interpreting its instructions from Congress, the Sentencing Commission concluded that the new enhancements were to "ensure that persons who misrepresent themselves to a minor, or use computers or Internet-access devices to locate and gain access to a minor, are severely punished." *Id.* at 48.

Law enforcement has responded to the new threat of cyber-predators by setting up sting operations and enforcing the increased penalties now available under the Guidelines. If a would-be predator cannot know whether the person with whom he communicates is an undercover agent rather than a susceptible minor or a pimp, and if the penalties for using the computer medium are especially severe, the hope is that pedaphilic predators will cease to find cyberspace such a safe and attractive hunting ground.

### II.    The Guideline

In this case, Mr. Robertson used the internet and e-mail to find and make arrangements with an undercover officer he believed to have access or control over young boys to travel from Pennsylvania to Colorado to meet two (fictitious) boys, aged thirteen and fourteen, for sex and drug use. This conduct falls within the plain language of subsection (b)(1)(B) of Guideline 2A3.2, which imposes a

two-level sentence enhancement "[i]f a computer or an Internet-access device was used to . . . (B) facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G § 2A3.2(b)(3).

This subsection applies when four conditions are met: (1) a computer or an Internet-access device must be used, (2) to facilitate transportation or travel, (3) by either a victim or a participant, (4) for the purpose of engaging in prohibited sexual conduct. The district court expressly found, and Mr. Robertson does not dispute, that a computer was used in the course of the offense. No one disputes that the intended conduct falls within the category of "prohibited sexual conduct." According to Application Note 1, "prohibited sexual conduct" includes "any sexual activity for which a person can be charged with a criminal offense." U.S.S.G. § 2A3.1, cmt. n.1 (cross-referenced in U.S.S.G. § 2A3.2, cmt. n.1). Mr. Robertson pled guilty to knowingly traveling in interstate commerce for the purpose of engaging in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b), so his conduct clearly falls within this definition.

At the sentencing hearing and in his brief, Mr. Robertson disputed that he used the computer to "facilitate" transportation or travel. Application Note 5 makes clear that the computer use to which the Guideline applies does not include communications with a third party, such as use of an airline's internet site to purchase airline tickets. Mr. Robertson is therefore correct that his use of the

internet to obtain airline tickets is irrelevant.  But the plea agreement stipulates that Mr. Robertson and the undercover agent "communicated via e-mail over the next several months coordinating the details of the tour and Defendant's travel plans."  Plea Agreement at 4, App. 13.[1]  The communication covered, at the very least, the date, time, and place of Mr. Robertson's arrival in Colorado; the price and method of payment; and plans regarding sexual activities and drug use. Moreover, it is undisputed that the entire trip was made possible by Mr. Robertson's use of the internet to search for, and locate, a "fantasy tour" to his liking.

Because the district court found that the enhancement did not apply in the absence of an actual victim, it did not reach the question of whether Mr. Robertson's computer use facilitated his travel.  However, in a companion case to

---

[1]In his brief, Mr. Robertson states:

> He and the undercover officer resumed their e-mail exchange.  They did not, contrary to the claim made in the government's opening brief, "coordinate[] the details of . . . [Mr. Robertson's] travel plans." (As will become clear later, the question whether Mr. Robertson arranged or "facilitated" his travel to Colorado has implications on his eligibility for the use-of-a-computer enhancement.)

Appellee's Answer Br., at 4 (brackets and ellipses in original; citation omitted). The government's statement, however, is a direct quotation from the factual stipulation in the plea agreement, to which Mr. Robertson agreed, and which he may not now attempt to challenge.  To the extent Mr. Robertson's argument regarding "facilitation" is based on this attempted repudiation of the facts stipulated in the plea agreement, it is without merit.

this one, involving almost identical facts and arising from the same sting operation, that question was answered affirmatively by the district court and briefed on appeal to this Court. *See United States v. McGraw*, No. 02-1407, slip op. at 4-5 (10th Cir. Dec. 2, 2003) (published). Our opinion in *McGraw* holds that the defendant did use a computer to "facilitate" his travel, because the computer made it substantially easier for him to find and book a "fantasy tour," as well as to negotiate the details of the trip. *See id.*, slip op. at 7. That analysis applies equally to Mr. Robertson.

The final condition set forth in U.S.S.G § 2A3.2(b)(3)(B) is that the travel facilitated by use of the computer or internet must be by "the victim or a participant." In interpreting this language, the district court placed great weight on Application Note 1, which defines "victim" as "(A) an individual who, except as provided in subdivision (B), had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." In this case, there was no actual minor victim, and the undercover law enforcement officer posed not as a minor but as a person with control of sexually pliant young boys. The court reasoned that the Guideline therefore does not apply:

> Subsection B [of the application note definition of "victim"] appears to be an attempt to address a sting operation. Subsection A appears to be an attempt to address a situation where there is an actual victim not

having attained the age of 16 years.

The situation which is completely left out is a situation where, as here, the undercover officer doesn't represent that the officer had not attained the 16 years, but, rather, represents that the officer has control of fictitious victims who have not attained the age of 16.

That situation is simply not addressed by the language of the Sentencing Commission. And therefore, I am satisfied the 2-level increase does not apply in this situation.

Tr. 26, App. 90.

The flaw in this analysis is that the only use of the term "victim" in subsection (B) of the Guideline is the reference to travel by "the victim *or a participant*." U.S.S.G § 2A3.2(b)(3)(B) (emphasis added). Thus, under the plain language of the Guideline, it does not matter whether there was a "victim" (meaning either an actual minor victim or an undercover officer posing as a minor); the Guideline applies if the computer or internet is used to facilitate travel by a "participant." Application Note 1 defines "participant" as follows:

A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant.

U.S.S.G § 3B1.1, cmt. n.1 (cross-referenced in U.S.S.G § 2A3.2(b)(3), cmt. n.1). Under this definition, Mr. Robertson was a "participant," and because it was *his* travel that was "facilitated" – not the victim's – the Guideline applies, notwithstanding the fact that there was no "victim."

-15-

All four conditions set forth for application of the Guideline are therefore present. A computer or internet-access device was used to facilitate travel by a participant for prohibited purposes. Moreover, while it is not necessary to look beyond the plain language, we note that this interpretation is consistent with the purposes of the provision. The Guideline was intentionally crafted to include sting operations within its scope; that is an effective way to deter would-be predators from using the internet for these purposes. There is no reason to limit application of the Guideline to just one kind of sting operation, one in which the undercover officer poses as a child. That may be a sensible restriction on the scope of subsection (A), where the gravamen of the enhancement is use of the computer to entice a child, but it bears no logical relation to subsection (B), where the gravamen is use of the computer to facilitate travel by the participant himself. For that purpose, it matters not at all whether the undercover officer making the arrangements on the other end is a virtual victim or a virtual pimp. The evil is the same.

### III.   The Application Notes

Although Mr. Robertson argues – incorrectly, as we have already explained – that the plain language of the Guideline supports his position, his principal reliance is on the interplay of two application notes. See Summary of Argument,

Appellee's Answer Br. 4-5. Application Note 5 includes a definition of "use of computer or internet-access device," and Application Note 1 includes a definition of "victim." Neither application note, read independently, supports Mr. Robertson's interpretation of the Guideline; each is addressed to a question other than that posed by this case. But when the definition of "victim" from Application Note 1 is read into the definition of computer "use" in Application Note 5, Mr. Robertson argues that the result supports his interpretation of the Guideline.

Application Note 5 is addressed to use of the internet for such collateral purposes as making airline ticket reservations. It states:

> Subsection (b)(3) is intended to apply only to the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim. Accordingly, the enhancement would not apply to the use of a computer or an Internet-access device to obtain airline tickets for the victim from an airline's Internet site.

U.S.S.G. § 2A3.2, cmt. n.5. This note is not addressed to the question whether there must be an actual victim. Rather, it draws a line between "direct" communications setting up the illegal sexual encounter, and collateral communications with third parties having no immediate connection to sexual predation. The application note thus focuses application of the Guideline on communications in which the computer is an especially insidious tool for sexual

-17-

predation, and not on indirect communications, such as use of the internet to make airline reservations, which fall outside the rationale for enhanced sentences under the Guideline.

Indeed, the major thrust of Application Note 5 supports application of the Guideline to this case. It might be thought that the evil addressed by the Guideline is that young people are particularly susceptible to being lured via computer, perhaps because of their naivete regarding false identities (a problem addressed separately in subsection (b)(2) of the Guideline) or because of a "child's general fascination with computer technology." *Reaves*, 253 F.3d at 1205. This might suggest that communications with adults fall outside the Guideline's intended scope. That suggestion, however, is refuted by Application Note 5, which makes clear that the Guideline applies to communications with minors *and* to communications with the adults who control access to them.

Nor does Application Note 1 suggest that the Guideline applies only when there is an actual minor victim. On the contrary, the note defines a "victim" as "(A) an individual who . . . had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." U.S.S.G. § 2A3.2, cmt. n.1. As the Commission explained, the purpose of this definition is to "ensure that offenders who are apprehended in an undercover operation are appropriately punished." *See*

-18-

U.S.S.G. app. C, amend. 592, at 49 (Supp. 2002). Because Application Note 1 makes clear the Commission's intent to apply the sentencing enhancement in sting operations as well as in cases involving actual victims, it supports application of the Guideline to this case.

Although Mr. Robertson does not make his argument so explicitly, it appears to be based on the theory that the two application notes should be combined. Application Note 5 refers to communications with a person in custody or control of "the victim," and Application Note 1 defines "victim" as either an actual minor or an uncover officer posing as a minor. Putting the two application notes together, the Guideline can be read as restricted to cases involving "the use of a computer or an Internet-access device to communicate directly with [(A) an individual who . . . had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years] or with a person who exercises custody, care, or supervisory control of [(A) an individual who . . . had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years]." The practical effect is to exclude sting operations where the undercover agent poses as a panderer rather than as a child.

The argument is clever, but not persuasive. The legally operative language

is found in the Guideline itself, which as we have explained, supports application to this case. The application notes are also binding, but they are binding in the sense of being authoritative interpretations of the Guideline. Reading Guideline § 2A3.2(b)(3)(B) in light of the application notes results in the same conclusion that we reach reading the Guideline alone. Only if the application notes are read independently of the Guideline, without regard to the issues they address or any conceivable purpose they might serve, do they even arguably produce a different result. We decline to import a definition from one application note into a separate application note, and thereby restrict the Guideline in a way unsupported by the Guideline's own language or by the language or purpose of either note read separately.

Not only does Mr. Robertson's reading strain linguistic plausibility, but it also corresponds to no conceivable statutory (or Guideline) purpose. Under his interpretation, the Guideline applies when the perpetrator communicates with an actual minor victim, with an undercover officer posing as an actual minor victim, or with an actual panderer, but does not apply when an undercover officer poses as a panderer. Mr. Robertson offers no reason for this distinction in light of the purposes of the Guideline. One could imagine limiting the Guideline to cases involving an actual victim; but that interpretation is foreclosed by Application Note 1. One could similarly imagine limiting the Guideline to communications

-20-

with minors rather than adults; but that interpretation is foreclosed by Application Note 5. There is no reason to distinguish between two different varieties of sting operation, in which the role of the computer and the reprehensibility of the conduct is essentially the same.[2] Deterring would-be predators from taking advantage of internet-based "fantasy tour" offerings like the one in this case falls squarely within the purpose of the Guideline.

In conclusion, to read the Guideline as applying when the undercover officer poses as a child but not when he poses as a panderer is supported by neither the language of the Guideline, which draws no such distinction, nor the

---

[2]An early version of the legislation authorizing the Guideline's enhancement criminalized certain activity directed toward "a person who had been 'represented' to be a minor, even if that person was, in fact, an adult." 144 Cong. Rec. S10,521 (daily ed. Sept. 17, 1998) (statement of Senator Leahy). The reasons for dropping that language are significant:

> The evident purpose was to make clear that the targets of sting operations are not relieved of criminal liability merely because their intended victim turned out to be an undercover agent and not a child. The new "sting" provisions addressed a problem that simply does not currently exist: no court has ever endorsed an impossibility defense along the lines anticipated by the House bill. The creation of special "sting" provisions in this one area could lend credence to impossibility defenses raised in other sting and undercover situations.

*Id.* Thus, Congress understood the preexisting law to allow sting operations of all kinds, and did not want to encourage defendants to argue otherwise on the principle of *inclusio unius*, *exclusio alterius*. Absent a clear manifestation of the Commission's intent to distinguish among sting operations, we agree with the Congress that such arguments should not be countenanced.

relevant application notes when read separately. In light of their actual purposes, each of the application notes supports application of the Guideline in this case. Thus, we conclude the district court erred when it held that § 2A3.2(b)(3)(B) of the Sentencing Guidelines does not apply to this case because there was no "victim."

## CONCLUSION

For the reason stated, we **REVERSE** Mr. Robertson's sentence and remand to the district court for resentencing.

*United States v. Robertson*, No. 02-1388

**Brorby**, Senior Circuit Judge, dissenting.

I respectfully dissent.

I disagree with the majority's conclusion Mr. Robertson used "a computer or Internet-access device ... to facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G. §2A3.2(b)(3)(B).

As the majority explains, subpart B of the guideline, on its face, appears to apply to Mr. Robertson's conduct. The majority believes "it is not necessary to look beyond the plain language" of the guideline. I disagree. According to the Supreme Court, we are additionally bound by the Sentencing Commission's interpretations or explanations in the commentary to the guideline unless the commentary "violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Commentary may "explain[] the guidelines and provide[] concrete guidance as to how *even unambiguous guidelines* are to be applied in practice." *See id.* at 44 (emphasis added). Within the ambit of interpreting and explaining a guideline, commentary may "demonstrate that the purview of the guideline is narrower than that which may be discerned from a literal reading of the guideline." *United States v. Frazier*, 53 F.3d 1105, 1113 (10th Cir. 1995).

In this case, the commentary does permissibly narrow the application of the guideline. Commentary note 5 explains the guideline "is intended to apply only to the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim." U.S.S.G. §2A3.2, cmt. n.5. Further guidance comes from commentary note 1, which defines a "victim" as "(A) an individual who ... had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." U.S.S.G. §2A3.2, cmt. n.1.

In this case it is undisputed Mr. Robertson did not communicate directly with a child under sixteen or an undercover officer posing as a child under sixteen. The majority nevertheless applies subpart B of the guideline concluding Mr. Robertson communicated with a person who exercised custody, care, or supervisory control of the victim. This conclusion ignores the term "victim" in the commentary. In this case, the undercover officer did not have custody, care or supervisory control over a child under sixteen. Furthermore, there was no undercover officer posing as a child under the age of sixteen. Consequently, subpart B of the guideline (as informed by the commentary) does not apply to Mr. Robertson's conduct.

The majority believes that neither commentary note 1 nor commentary note 5, when read independently, precludes application of the guideline to Mr. Robertson's conduct. Thus, the majority declines to read the two commentary notes together. This method of interpretation has the effect of making the commentary's definition of "victim" applicable to the guideline itself but not to the accompanying commentary. I know of no precedent requiring us to view individual commentary notes in isolation. To me it seems far more reasonable to apply the commentary's definition of "victim" whenever the term appears in both the guideline and the commentary.

If, however, comment 1's definition of "victim" is not incorporated into comment 5, the term "victim" should retain its common meaning of a real child victim, rather than an undercover officer posing as a child. *Cf.* U.S.S.G. App. C, amdt. 592, at 49 (Supp. 2002) (explaining the commentary's definition of "victim" is intended to "clarify[] that 'victim' includes an undercover police officer who represents to the perpetrator of the offense that the officer was under the age of 16 years"). Under the common definition of "victim," the guideline is equally inapplicable because this case did not involve communication with an individual exercising custody, care, or supervisory control over a real child victim.

The majority avoids this result by restricting the breadth of commentary note 5. According to the majority, commentary note 5 "is not addressed to the question whether there must be an actual victim." Instead, the majority focuses on the illustration in commentary note 5. It states: "Accordingly, the enhancement would not apply to the use of a computer or an Internet-access device to obtain airline tickets for the victim from an airline's Internet site." U.S.S.G. §2A3.2, cmt. n.5. Based on the illustration, the majority asserts the commentary is intended to "draw[] a line between 'direct' communications ... with third parties having no immediate connection to sexual predation." Under this theory, the note allows enhancement of Mr. Robertson's sentence because his communication with the undercover officer had an immediate connection to sexual predation.

I believe the majority's interpretation ignores the relevant language in commentary note 5. The commentary plainly limits "use" to "the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim." *Id*. The commentary's illustration concerning the online purchase of airline tickets should not usurp the plain language of the first sentence of note 5.

This case is particularly troubling because the majority seems primarily concerned that reading the two commentary notes together has the "practical effect [of] exclud[ing] sting operations where the undercover agent poses as a panderer rather than as a child." The majority sees "no conceivable statutory (or Guideline) purpose" for excluding the type of sting in this case from enhancement under the guideline. Instead, the majority focuses on Congress' and the Commission's general desire to punish sex offenders who use the internet to ensnare child victims, using this general desire as justification for applying the enhancement in this case.

While I have no doubt Congress and the Commission intended stiff punishment for sex offenders who attempt to prey on children via the Internet, I do not think this congressional intent gives the court license to rewrite the guideline and its accompanying commentary. Rather, "'courts should strive to apply the sentencing guidelines as written, giving full force and effect to the Sentencing Commission's interpretive commentary and application notes.'" *United States v. Sedoma*, 332 F.3d 20, 27 (1st Cir. 2003) (quoting *Unites States v. Zapa*, 1 F.3d 46, 47 (1st Cir. 1993). "Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation [or Sentencing Commission Guidelines] in accord with their own conceptions of

prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555 (1979).

I am particularly unwilling to ignore the plain language of the guideline and its commentary, in this case where the legislative history and the Sentencing Commission history at most evidence a general intent to punish offenders caught in sting operations. *See, e.g.*, U.S.S.G. App. C, amdt. 592, at 48 ("[L]egislative history ... indicates congressional intent to ensure that persons who misrepresent themselves to a minor, or use computers or Internet-access devices to locate and gain access to a minor, are severely punished."). Nowhere in the history is there evidence Congress or the Commission specifically intended the enhancement to apply when an undercover agent poses as a panderer. Furthermore, the Sentencing Commission could have defined "victim" in such a way as to allow the enhancement to encompass sting operations like the one used here. For example, the Commission elsewhere defined "minor victim" as "(A) an undercover law enforcement officer who represented to the defendant that the officer was a minor; or (B) any minor the officer represented to the defendant would be involved in the prohibited sexual conduct." U.S.S.G. §4B1.5 cmt. n.1. The Commission knew how to make the guideline applicable to such an operation but chose not to. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in

-6-

another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (Quotation marks and citations omitted.)); *United States v. Blackwell*, 323 F.3d 1256, 1260-61 (10th Cir. 2003). Consequently, while there might be public policy arguments for punishing Mr. Robertson harshly, I would not depart from the plain language of the guideline and accompanying commentary.

Of course, the majority believes its opinion embraces the plain meaning of the guideline and commentary and that the reading espoused by Mr. Robertson (as well as myself and the district judge) "strain[s] linguistic plausibility." While I firmly believe my interpretation is the most natural reading of the commentary, in the event the guideline and commentary are actually ambiguous, the rule of lenity should apply. "The rule of lenity requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants." *United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001) (citing *Ladner v. United States*, 358 U.S. 169, 178 (1958) and *United States v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995)). If the rule of lenity were applied, Mr. Robertson's sentence would not be enhanced under subpart B of the guideline.

Having concluded subpart B of the guideline does not apply, I turn briefly

to subpart A. It allows a two-level enhancement if Mr. Robertson used his computer to "persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct." U.S.S.G. §2A3.2(b)(3)(A). In this case, Mr. Robertson did not use his computer to persuade, induce, entice or coerce a "victim," i.e., a child or an undercover officer posing as a child. See U.S.S.G. §2A3.2, cmt. n.1. Instead, Mr. Robertson used his computer to communicate with a law enforcement officer posing as someone who had access to children. No "victim" was ever involved. Because Mr. Robertson did not use his computer to persuade, induce, entice, or coerce a "victim," as defined by the commentary, I conclude the two-level enhancement under U.S.S.G. §2A3.2(b)(3)(A) is not applicable.

For the foregoing reasons, I cannot agree with the majority and would instead affirm the district court's opinion.