BRORBY, Senior Circuit Judge,
dissenting.
I respectfully dissent.
I disagree with the majority’s conclusion Mr. Robertson used “a computer or Internet-access device ... to facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct.” U.S.S.G. § 2A3.2(b)(3)(B).
As the majority explains, subpart B of the guideline, on its face, appears to apply to Mr. Robertson’s conduct. The majority believes “it is not necessary to look beyond the plain language” of the guideline. I disagree. According to the Supreme Court, we are additionally bound by the Sentencing Commission’s interpretations or explanations in the commentary to the guideline unless the commentary “violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.” Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Commentary may “explain[] the guidelines and provide[ ] concrete guidance as to how even unambiguous guidelines are to be applied in practice.” See id. at 44, 113 S.Ct. 1913 (emphasis added). Within the ambit of interpreting and explaining a guideline, commentary may “demonstrate that the purview of the guideline is narrower than that which may be discerned from a literal reading of the guideline.” United States v. Frazier, 53 F.3d 1105, 1113 (10th Cir.1995).
In this case, the commentary does permissibly narrow the application of the guideline. Commentary note 5 explains the guideline “is intended to apply only to the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim.” U.S.S.G. § 2A3.2, cmt. n.5. Further guidance comes from commentary note 1, which defines a “victim” as “(A) an individual who ... had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years.” U.S.S.G. § 2A3.2, cmt. n.l.
In this case it is undisputed Mr. Robertson did not communicate directly with a child under sixteen or an undercover officer posing as a child under sixteen. The majority nevertheless applies subpart B of the guideline concluding Mr. Robertson communicated with a person who exercised custody, care, or supervisory control of the victim. This conclusion ignores the term “victim” in the commentary. In this case, the undercover officer did not have custody, care or supervisory control over a child under sixteen. Furthermore, there was no undercover officer posing as a child under the age of sixteen. Consequently, subpart B of the guideline (as informed by the commentary) does not apply to Mr. Robertson’s conduct.
The majority believes that neither commentary note 1 nor commentary note 5, when read independently, precludes application of the guideline to Mr. Robertson’s conduct. Thus, the majority declines to read the two commentary notes together. This method of interpretation has the effect of making the commentary’s definition of “victim” applicable to the guideline itself *1068 but not to the accompanying commentary. I know of no precedent requiring us to view individual commentary notes in isolation. To me it seems far more reasonable to apply the commentary’s definition of “victim” whenever the term appears in both the guideline and the commentary.
If, however, comment l’s definition of “victim” is not incorporated into comment 5, the term “victim” should retain its common meaning of a real child victim, rather than an undercover officer posing as a child. Cf. U.S.S.G.App. C, amdt. 592, at 49 (Supp.2002) (explaining the commentary’s definition of “victim” is intended to “clarify!] that ‘victim’ includes an undercover police officer who represents to the perpetrator of the offense that the officer was under the age of 16 years”). Under the common definition of “victim,” the guideline is equally inapplicable because this case did not involve communication with an individual exercising custody, care, or supervisory control over a real child victim.
The majority avoids this result by restricting the breadth of commentary note 5. According to the majority, commentary note 5 “is not addressed to the question whether there must be an actual victim.” Instead, the majority focuses on the illustration in commentary note 5. It states: “Accordingly, the enhancement would not apply to the use of a computer or an Internet-access device to obtain airline tickets for the victim from an airline’s Internet site.” U.S.S.G. § 2A3.2, cmt. n.5. Based on the illustration, the majority asserts the commentary is intended to “draw! ] a line between ‘direct’ communications ... with third parties having no immediate connection to sexual predation.” Under this theory, the note allows enhancement of Mr. Robertson’s sentence because his communication with the undercover officer had an immediate connection to sexual predation.
I believe the majority’s interpretation ignores the relevant language in commentary note 5. The commentary plainly limits “use” to “the use of a computer or an Internet-access device to communicate directly with the victim or with a person who exercises custody, care, or supervisory control of the victim.” Id. The commentary’s illustration concerning the online purchase of airline tickets should not usurp the plain language of the first sentence of note 5.
This case is particularly troubling because the majority seems primarily concerned that reading the two commentary notes together has the “practical effect [of] excluding] sting operations where the undercover agent poses as a panderer rather than as a child.” The majority sees “no conceivable statutory (or Guideline) purpose” for excluding the type of sting in this case from enhancement under the guideline. Instead, the majority focuses on Congress’ and the Commission’s general desire to punish sex offenders who use the internet to ensnare child victims, using this general desire as justification for applying the enhancement in this case.
While I have no doubt Congress and the Commission intended stiff punishment for sex offenders who attempt to prey on children via the Internet, I do not think this congressional intent gives the court license to rewrite the guideline and its accompanying commentary. Rather, “ ‘courts should strive to apply the sentencing guidelines as written, giving full force and effect to the Sentencing Commission’s interpretive commentary and application notes.’” United States v. Sedoma, 332 F.3d 20, 27 (1st Cir.2003) (quoting United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993)). “Under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation [or Sentencing Commission Guide *1069 lines] in accord with their own conceptions of prudent public policy.” United States v. Rutherford, 442 U.S. 544, 555, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979).
I am particularly unwilling to ignore the plain language of the guideline and its commentary, in this case where the legislative history and the Sentencing Commission history at most evidence a general intent to punish offenders caught in sting operations. See, e.g., U.S.S.G.App. C, amdt. 592, at 48 (“[L]egislative history ... indicates congressional intent to ensure that persons who misrepresent themselves to a minor, or use computers or Internet-access devices to locate and gain access to a minor, are severely punished”). Nowhere in the history is there evidence Congress or the Commission specifically intended the enhancement to apply when an undercover agent poses as a panderer. Furthermore, the Sentencing Commission could have defined “victim” in such a way as to allow the enhancement to encompass sting operations like the one used here. For example, the Commission elsewhere defined “minor victim” as “(A) an undercover law enforcement officer who represented to the defendant that the officer was a minor; or (B) any minor the officer represented to the defendant would be involved in the prohibited sexual conduct.” U.S.S.G. § 4B1.5 cmt. n.l. The Commission knew how to make the guideline applicable to such an operation but chose not to. Cf. Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” (Quotation marks and citations omitted.)); United States v. Blackwell, 323 F.3d 1256, 1260-61 (10th Cir.2003). Consequently, while there might be public policy arguments for punishing Mr. Robertson harshly, I would not depart from the plain language of the guideline and accompanying commentary.
Of course, the majority believes its opinion embraces the plain meaning of the guideline and commentary and that the reading espoused by Mr. Robertson (as well as myself and the district judge) “strain[s] linguistic plausibility.” While I firmly believe my interpretation is the most natural reading of the commentary, in the event the guideline and commentary are actually ambiguous, the rule of lenity should apply. “The rule of lenity requires courts to interpret ambiguous statutes, including the Sentencing Guidelines, in favor of criminal defendants.” United States v. Gay, 240 F.3d 1222, 1232 (10th Cir.2001) (citing Ladner v. United States, 358 U.S. 169,178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) and United States v. Blake, 59 F.3d 138, 140 (10th Cir.1995)). If the rule of lenity were applied, Mr. Robertson’s sentence would not be enhanced under subpart B of the guideline.
Having concluded subpart B of the guideline does not apply, I turn briefly to subpart A. It allows a two-level enhancement if Mr. Robertson used his computer to “persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct.” U.S.S.G. § 2A3.2(b)(3)(A). In this case, Mr. Robertson did not use his computer to persuade, induce, entice or coerce a “victim,” i.e., a child or an undercover officer posing as a child. See U.S.S.G. § 2A3.2, cmt. n.l. Instead, Mr. Robertson used his computer to communicate with a law enforcement officer posing as someone who had access to children. No “victim” was ever involved. Because Mr. Robertson did not use his computer to persuade, induce, entice, or coerce a “victim,” as defined by the commentary, I conclude the two-level enhancement under U.S.S.G. § 2A3.2(b)(3)(A) is not applicable.
*1070 For the foregoing reasons, I cannot agree with the majority and would instead affirm the district court’s opinion.