**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD C. BLACK,

Defendant - Appellant.

No. 05-1337

(D. Colorado)

(D.C. No. 01-CR-450-WM)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Circuit Judge, **ANDERSON** and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Ronald C. Black was convicted, following a jury trial, of six counts of aiding and abetting and participating in wire fraud, in violation of 18 U.S.C.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 1343 and 18 U.S.C. § 2. Black was sentenced to 100 months' imprisonment followed by three years of supervised release, and a $600 special assessment was imposed. Black appealed, alleging the district court committed sentencing errors. For the reasons set forth below, we affirm.

## BACKGROUND

Black's present wire fraud convictions result from conduct that occurred in March 1997 during his incarceration at the Federal Correctional Institution in Englewood, Colorado ("FCI Englewood"). [1] By means of three-way calls initiated through an accomplice outside the prison, [2] Black was able to falsely represent to various entities that a New York City securities company, Nomura Securities International, was opening a branch office in Texas and thereby succeeded in generating checks drawn on a Nomura bank account in order to pay nonexistent payroll, accounts payable, and contract labor obligations. His accomplice then assisted him in cashing some of these checks while others were used for other purposes, including the purchase of a Jaguar automobile. During the eleven-day

---

[1]At that time, Black was awaiting trial in another case. He was subsequently convicted and sentenced to seventy-eight months' incarceration. He discharged that sentence in May 2004 and was released to the custody of the United States Marshals Service pending the outcome of his trial in this case.

[2]Because the three-way calls took place after Black called his accomplice collect using prison telephones, these calls were recorded and subsequently introduced into evidence at Black's trial.

period during which Black made these calls, over $400,000 in checks were prepared. The FBI was alerted to the scheme and intervened to stop further transactions on March 28, 1997. Black was indicted in December 2001 and was convicted in June 2004.

After Black's conviction, the United States Probation Office issued a Presentence Investigation Report ("PIR"), which, following the United States Sentencing Commission, Guidelines Manual ("USSG") (Nov. 1998), initially calculated an offense level of 21. Together with a criminal history category of VI, this yielded a Guideline range for imprisonment of seventy-seven to ninety-six months. In April 2005, the government filed a Notice of Relevant Sentencing Information, asserting that Black had offered to pay a fellow inmate $50,000 to have the Assistant United States Attorney ("AUSA") responsible for handling Black's prosecution and sentencing, killed. Based on this information, the Probation Office filed an addendum to the PIR recommending a 2-level increase in Black's offense level pursuant to the obstruction of justice upward adjustment set forth in USSG §3C1.1. The applicable Guideline range would thereby be increased to 92 to 115 months.

Black objected to this adjustment, and the matter was taken up at Black's sentencing hearing. The government offered Black's former cellmate as a witness. The cellmate testified that, in July 2004, at a time when he was

scheduled to be released from prison in around six or seven months, Black had

offered him $50,000 to kill the AUSA and that Black had explained that he

wanted her killed because

> in federal court . . . you can get a sentence for like nine months or
> you can get a sentence for 120 months, and . . . [this AUSA] was
> pushing the boundaries trying to give him the most that she could
> give him or get him, and if it was any other U.S. attorney, it wouldn't
> be like that.

Sentencing Hr'g Tr. at 9, R. Vol. X. Black's counsel argued that, even if this

testimony were accepted as true, he "d[id] not know and cannot see how [Black's]

attempting to solicit somebody to harm or to kill the prosecutor was, in fact,

going to impede the sentencing proceedings themselves." Id. at 78. He further

argued that, at the time Black allegedly made the solicitation, "[Black] was in a

very emotional state" and "was acting out of character, unusual," and suggested

that the court "take that into consideration in considering whether or not this was

an actual threat or attempt on Mr. Black's part." Id. at 79-80.

Following counsels' arguments at the sentencing hearing, the district court

concluded that the testimony of Black's cellmate was credible and that "on a

probability basis . . . [Black] did make the statements" asking the cellmate to kill

the AUSA. Id. at 109. The court further stated that,

> even though to some extent it's remote from the result, to just have
> people threatened like that does have an impact on the individuals, of
> course, and hence on the administration of justice, that if participants

-4-

are fearful for their well-being and wish to minimize that fear, it impacts a fair result.

So there is no direct influence, as such, that I find here, but just the opportunity for that to have that impact allows me to arrive at the conclusion that th[e] [obstruction of justice] adjustment should be made . . .

Id. at 114. The court thereupon sentenced Black to 100 months' imprisonment, as indicated above. Black now appeals, arguing (1) that the district court erred in applying the advisory Guidelines §3C1.1 obstruction of justice adjustment, and (2) that it was error under United States v. Booker, 125 S. Ct. 738 (2005), for the district court to make findings regarding sentencing enhancements by a preponderance of the evidence rather than the jury making such findings beyond a reasonable doubt.


**DISCUSSION**

As an initial matter, Black concedes that "[b]ecause the district court in [his] case specifically stated that it was considering the Sentencing Guidelines as advisory rather than as mandatory, Tenth Circuit case law dictates that there was no Booker violation in [his] case." Appellant's Br. at 15. He explains that he is simply "raising this issue [here] in order to preserve it in case of future change in

the law." Id. We agree that the issue he raises is settled in this circuit,[3] and we therefore need not address this argument further.

The sole question before us is thus whether the district court erred in determining that the obstruction of justice adjustment set forth in USSG §3C1.1 could properly be applied to calculate the advisory Guideline sentencing range under the circumstances of this case. We have held that, "notwithstanding Booker's invalidation of the mandatory nature of the Sentencing Guidelines, district courts must still consult the Guidelines and take them into account when sentencing." United States v. Graham, 413 F.3d 1211, 1218 (10th Cir. 2005) (internal quotation and citation omitted). Thus, our review of a district court's sentencing determinations "continues to encompass review of the district court's interpretation and application of the Guidelines." Id. (internal quotation omitted). In conducting this review, we consider "legal questions *de novo* and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." Id. (internal quotation omitted).

The Guideline governing obstruction of justice adjustments, USSG §3C1.1, states:

---

[3]See United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005) ("[I]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment."); United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005) ("[J]udicial fact-finding by a preponderance of the evidence [is not] per se unconstitutional.").

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

USSG §3C1.1. The Guideline commentary includes a "non-exhaustive list of examples of the types of conduct to which this adjustment applies," including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id., comment. (n.4(a)). Black argues that "[n]owhere in this long list is there any mention of causing or attempting to cause injury to a prosecutor and, although the list is non-exhaustive, nowhere in the list is there any type of behavior similar to" Black's. Appellant's Br. at 11. Specifically, Black contends that, although he attempted to have an AUSA killed, he did not "threaten[], intimidat[e], or otherwise unlawfully influenc[e]" her, or attempt to do so. Id. In support of this argument, Black points out that no court has applied §3C1.1 in circumstances where a defendant has actually attempted to kill a prosecutor. He contrasts this absence of authority with unpublished and district court cases in which courts applied §3C1.1 where the defendant communicated threats directly to their prosecutors. See United States v. Jarrar, No. 03-1492, 99 Fed. Appx. 726, 730 (6th Cir. May 27, 2004) (approving adjustment where defendant sent threatening correspondence to court

and AUSA); United States v. Bellrichard, 801 F. Supp. 263, 266 (D. Minn. 1992) (same).

Although we acknowledge that, as far as we have been able to determine, there is no prior case where §3C1.1 has been applied in precisely similar circumstances, we reject Black's argument. For one thing, we do not believe the example listed in §3C1.1 regarding threats to witnesses and jurors is limited to situations where the defendant has communicated a threat directly to the one he intends to threaten. E.g., United States v. Self, 132 F.3d 1039, 1042 (4th Cir. 1997) (recognizing that "attempting to have a witness killed easily falls within the type of conduct that constitutes an obstruction of justice" for purposes of §3C1.1). Moreover, the fact that here the threat was against a prosecutor rather than a witness or juror, and that prosecutors are not specifically listed in the commentary on §3C1.1, is not dispositive. Indeed, the commentary explains that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." USSG §3C1.1, comment. (n.3). Although the examples listed in the commentary provide important guidance, the key factors involved when applying this adjustment are that the obstructive conduct take place "during the course of the investigation, prosecution, or sentencing" of the convicted offense and that this conduct in some way be aimed at interfering with the administration of

justice in regard to that or a closely related offense. Id. §3C1.1; see id., comment. (n.1).

Here, it is undisputed that Black's attempt to have his prosecutor killed took place during the sentencing phase of his prosecution. As described above, Black's cellmate also testified that Black's desire to have her killed stemmed from his perception that she would be particularly intent on obtaining the maximum possible term of imprisonment for Black's convictions. Thus, there was evidence that Black's conduct was directly tied to a desire to interfere with the course of his pending sentencing proceedings by removing an individual that he perceived as especially threatening to his interests. Cf. United States v. Haddad, 10 F.3d 1252, 1263 (7th Cir. 1993) (overturning the imposition of a §3C1.1 adjustment because there was no evidence the defendant's statement, made out of frustration, was "*intended to threaten the prosecutor . . . for the purpose of avoiding responsibility for the crime for which he was being tried*"). Under these circumstances, we hold that the district court's application of §3C1.1 was not in error.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge