**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

NORMA EL-SAMAD,

      Defendant-Appellant.

No. 03-6166
(D.C. No. CR-02-08-A)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**McCONNELL,** Circuit Judge.

I.

In a 47-count indictment filed in the United States District Court for the

Western District of Oklahoma, Norma El-Samad ("El-Samad"), and three others

were charged with various drug and drug related crimes. El-Samad, and the

others, were charged in Count One with conspiring with each other, and others,

from January 1999 to July 2001, to possess and distribute pseudoephedrine, a

listed chemical, knowing and having reasonable cause to believe that the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2).

In Counts 2 through 38, El-Samad was charged with "Structuring Transactions to Avoid Reporting Requirements," in violation of 31 U.S.C. §§ 5322(b) and 5324(a)(3). Thirty seven transactions were separately listed involving transactions totaling over three hundred thousand dollars. She was not named as a defendant in the remaining counts.

In a joint trial with one of the four named defendants in the indictment, El-Samad was convicted on Count 1, and on nine counts of structuring transactions to avoid reporting requirements. El-Samad was sentenced to 97 months on Count 1 and 60 months on each of the remaining counts, all counts to be served concurrently. She was also ordered to serve three years of supervised release after her release from prison. In connection with the latter, the district court imposed the following conditions on her supervised release:

> And she'll perform community service for one year immediately following her release at the rate of four hours per week while she's employed full-time and 20 hours per week while she's employed less than full time.

Some procedural background will perhaps put the present controversy in focus. El-Samad was represented at trial by retained counsel, who, by order of the district court, was allowed to withdraw from the case after trial. This court appointed counsel to represent El-Samad on appeal. Appointed counsel then filed

a so-called Anders brief in this Court. *Anders v. California,* 386 U.S. 738 (1967). At the same time, counsel also filed with this Court a motion to withdraw as counsel for El-Samad, stating that the ground he asserted on behalf of El-Samad in his brief was "frivolous." In that brief, counsel asserted, at El-Samad's request, that there was insufficient evidence to support her conviction.

Pursuant to an order of this Court, El-Samad filed a pro-se response to counsel's motion to withdraw from the case. Her position was that her appeal had "merit" because she had been convicted "on testimony that was not true" and that her trial lawyer was "ineffective" and had not called "any witnesses on behalf of the appellant." In her response, El-Samad also stated that her court-appointed appellate counsel had "never interviewed" her and concluded by stating that she "had a constitutional right to full review" of her trial. She asked "that she be allowed to continue with her appeal, and that either co-counsel be appointed or self representation be allowed."

The government filed a brief in response to the opening brief submitted by El-Samad's appointed attorney, in which it agreed with opposing counsel that the appeal was frivolous and that the appeal should be dismissed because it was frivolous. As to El-Samad's suggestion that she had "ineffective assistance" in the district court, the government noted that generally a claim of ineffective assistance of trial counsel is brought in a collateral proceeding, and not in a direct

-3-

appeal, citing *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir. 1995)(*en banc*).

This Court on December 2, 2003, granted counsel's motion to withdraw and appointed the Federal Public Defender of Colorado to represent El-Samad on appeal, which he has done.

On appeal, the Public Defender does not challenge El-Samad's conviction on any ground, nor does he challenge her period of incarceration or the fact that the court ordered three years of supervised release. He, however, does challenge the court's order as it relates to the imposition of "community service" to be rendered during her period of supervised release.

As concerns "community service," U.S.S.G. §5F1.3 and the commentary thereafter, provides as follows:

**5F1.3 <u>Community Service</u>**
Community service may be ordered as a condition of probation or supervised release.

<u>Commentary</u>
<u>Application Note:</u>
1. Community service generally should not be imposed in excess of 400 hours. Longer terms of community service impose heavy administrative burdens relating to the selection of suitable placements and the monitoring of attendance.[1]

---

[1]"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Stinson v. United States,* 508 U.S. 36, 38 (1993); *United States v. Robertson*, 350 F.3d 1109,

(continued...)

Counsel points out that if El-Samad performs 4 hours a week of community service for one year, she will be rendering 208 hours of service, whereas, if she would render 20 hours of service per week, for one year, she would perform 1040 hours. The latter, of course, would be substantially more than the suggested 400 hour limitation referred to in the commentary to U.S.S.G. §5F1.3. Counsel asks that we reverse that portion of her sentence and remand that one matter for re-sentencing by the district court wherein it would not impose a community service sentence of more than 400 hours.

There was no contemporaneous objection to the sentence imposed by the district court. When a defendant fails to object to a condition of supervised release that is among the conditions recommended in the Sentencing Guidelines, the defendant has waived the objection. *United States v. Barajas*, 331 F.3d 1141, 1145 (10th Cir. 2003). Hence, it is agreed that we review the propriety of the sentence imposed, now raised on appeal, for plain error.

U.S.S.G. § 1B1.7, under the heading "Significance of Commentary," states that "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. §3742."

We note at the outset that §5F1.3 is directory in nature, and does <u>not</u>

---

[1](...continued)
1112 (10th Cir. 2003).

mandate that all community service sentences be for less than 400 hours. The reason stated in the commentary for recommending that a community service sentence be no more than 400 hours is that a community service sentence of more than 400 hours would impose "heavy administrative burdens" on others. One purpose of community service by a defendant to take effect after his or her release from incarceration is, in case he or she cannot find immediate employment, to forestall any thought of a defendant to resume his or her criminal activity. *See Barajas,* 331 F.3d at 1145-6; 18 U.S.C. §3583(d); U.S.S.G. § 5D1.3(b). And this Court has upheld a community service sentence of 500 hours in *United States v. Libretti*, No 93-8001, 1994 WL 573940 (10th Cir. 1994). *See also United States v. Graham*, 946 F.2d 19, 22 (4th Cir. 1991).

In short, we find no error in the "community service" portion of the sentence imposed on El-Samad.

As stated at the outset of this order, in his *Anders* brief, counsel, although conceding that it was a frivolous argument, nonetheless argued, briefly, that the evidence did not support the jury's verdicts. On motion, which was granted, El-Samad thereafter filed a pro-se brief, again arguing that she was convicted on the basis of perjured testimony. We find nothing in the record that supports El-Samad's claim of perjury, and in our view the evidence supports the verdict.

II.

This case was fully briefed and placed on the calendar for May, 2004. On June 24, 2004, the Supreme Court announced its opinion in *Blakely v. Washington*, 124 S. Ct. 2531. By leave of this Court, the parties thereafter filed supplemental briefs concerning the impact, if any, of *Blakely* on the present case. It was the position of El-Samad that under *Blakely* we should invalidate the United States Sentencing Guidelines ("Guidelines"), vacate El-Samad's sentence and remand for re-sentencing. The government's position was that *Blakely* had no application to the Guidelines. On September 9, 2004, at the request of parties, we entered an order holding the present case in abeyance until the Supreme Court acted on the then pending case in the Supreme Court of *United States v. Booker-Fanfan.* The Supreme Court announced its decision in *Booker-Fanfan* on January 12, 2005. *United States v. Booker-Fanfan*, 125 S.Ct. 728 (2005). Such being the case, we are not here concerned with the Blakely case, as such, and our present task is to determine the effect, if any, of *Booker-Fanfan* on El-Samad's sentence. Neither party has sought to file a further brief on the impact of *Booker-Fanfan* on the present case, although counsel for El-Samad did cite *Booker-Fanfan* in a memorandum of supplemental authority. Be that as it may, we must, and do, consider *Booker-Fanfan* in disposing of the present appeal. *See Booker-Fanfan*, 125 S. Ct. at 768-69, *United States v. Lott*, 310 F.3d 1231,1233 (10th Cir. 2002).

The Pre-Sentence Report set El-Samad's base offense level at 30. In so doing, the Report relied on U.S.S.G. §2D 1.11 (2000) which provided that when 20 kilograms or more of pseudoephedrine is involved the base offense level is 30. The Report further indicated that, in fact, 1,173 kilograms were involved. The adjusted base offense level was ultimately set at 30, which, when coupled with a Criminal History Category I, resulted in a guideline range of 97 to 121 months. As indicated, the district court sentenced El-Samad to 97 months imprisonment.

Counsel filed an objection to parts of the Presentence Report, contending, generally, that the record did not support the Report's recommendation. There was no objection based on Sixth Amendment grounds. Specifically, counsel's objection read, in its entirety, as follows:

> Defendant objects to paragraphs: 12, 13, 16, 18, 19, 21, 22, 25, 36, 63, and 85 of the presentence report, denies their factual accuracy, and objects to any sentence based in whole or in part therein.

The Response by the Probation Officer read, in its entirety, as follows:

> Response by the probation officer: It appears that the defendant's objections are based on the amount of pseudoephedrine involved in this case and the total offense level and guideline range calculated based on these amounts. This information was obtained from DEA agents, is believed to be correct as reported in the presentence report, and can be supported by agent testimony.

It would appear from the transcript of the sentencing hearing that counsel's basic objection to the Pre-Sentence Report was the statement therein that 1,173 kilograms of pseudoephedrine was involved. Testimony from DEA agents to that

effect was received at the sentencing hearing. However, at the conclusion of the hearing, the district court clearly indicated that the statement in the Pre-Sentence Report that 1,173 kilograms of pseudoephedrine was involved was really a "non-issue." In this regard, the district court noted that U.S.S.G. § 2D1.11 provided for a base offense level of 30 if "20 kilograms or more of pseudoephedrine" was involved. The district court then concluded that the requirement of "20 kilograms or more of pseudoephedrine" had been met, and that, such being the case, it did not have to decide how much more than 20 kilograms was involved. The district court overruled the objection to drug quantity, and, in this connection, there is nothing in the record to suggest that counsel believed that there was "less than 20 kilograms" involved. Further, we note that the district court sentenced El-Samad to the lowest figure within the guideline range, i.e. 97 months, the guideline range being 97 - 121 months. It would appear that in so doing the court was not proceeding on the basis that 1,173 kilograms of pseudoephedrine was involved. In thus sentencing, the district court also took into consideration El-Samad's "age" and "relative culpability."

The constitutionality of the Guidelines was not raised at sentencing, therefore we review for plain error. *United States v. Clifton*, 406 F.3d 1173 (10th Cir. 2005). Applying *Booker-Fanfan,* as we must do, there was plain error because the judge found facts and treated the Guidelines as mandatory. *United*

*States v. Dowlin*, 408 F.3d 647, 669 (10th Cir. 2005). However, El-Samad must also show that the error affected substantial rights which seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.* El-Samad has not met these 3rd and 4th requirements of the "4-prong test." *See United States v. Gonzales-Huerta,* 403 F.3d 727 (10th Cir. 2005); *United States v. Dazey*, 403 F.3d 1174 (10th Cir. 2005).

We recognize that *Fanfan* holds that the Guidelines are only "advisory" and not "mandatory." However, there is nothing in the present record to suggest that the district court would have sentenced El-Samad below the guideline range. Sufficient evidence supports El-Samad's conviction and the sentence imposed.

Judgment of conviction and sentence affirmed.

ENTERED FOR THE COURT,


Robert H. McWilliams,
Senior Circuit Judge